UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LAWRENCE GREGORY BURNS,

        Plaintiff,

v.                                  Case No. 23-cv-1266-pp

S. POLK, J. PROEBER
and JOHN DOE,

        Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 3) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

    Lawrence Gregory Burns, who is incarcerated at Dodge Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 3, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 3)**

    The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On October 20, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $30.67. Dkt. No. 9. The court received $30.70 on November 8, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The complaint names as defendants correctional officers S. Polk and J. Proeber and "John Doe defendants." Dkt. No. 1 at 1. The plaintiff alleges that on December 24, 2021, he was a detainee housed on protective custody at the Milwaukee County Jail. Id. at 2. He says he "called a medical emergency" because he was experiencing shortness of breath and chest pains, which he says felt "as if [he] was being stabbed in the chest with butcher knife." Id. He also was experiencing dizziness, blurred vision and difficulty walking. Id. The plaintiff says Polk and Proeber were working at the jail at the time. Id. A nurse (not a defendant) arrived with Polk to pass out medications, and the plaintiff

told her about his symptoms. Id. at 2–3. The nurse took the plaintiff's temperature, which was 99 degrees, and the plaintiff "was dripping sweat." Id. at 3. The nurse left to get a COVID-19 test and told the plaintiff to "wait about 10 minutes." Id. She returned, administered the test and told him she would inform Polk and Proeber in about fifteen minutes if his test was positive. Id. He says she advised the plaintiff to "call a 'medical emergency'" if the test results were positive. Id. The nurse left, and the plaintiff says he "never heard anything from those two officers." Id. He says that "all [he] remember[s] is waking up with alote [*sic*] of officers carr[y]ing [him] out of [his] room (cell) into the middle of the Dayroom" because he had passed out. Id. He says he remembers pressing the medical emergency button, but he did not receive an answer. Id.

The plaintiff alleges that "[t]he fire department was called and also ambulance." Id. at 4. His blood pressure was 189 over 129, and he was positive for COVID-19. Id. He alleges that he was sent to Froedtert Hospital; and when he returned, "Classification of the Jail put [him] on a regular Housing Unit despite [his] Protective Custody Classification with General Population." Id. He claims that because he was supposed to be on protective custody, "this was a reckless disregard of [him] being a (PC) and jeopardized [his] safety." Id. The plaintiff alleges he "was punished by being locked in over 70 hours at a time without making calls to [his] family or a shower." Id. He alleges that he was "put back on a Covid-19 positive pod after contracting Covid." Id. The plaintiff says he "was also told by officers that [he was] the only P.C. in the Pod, and

4

they [were] going to let [him] out with everyone else and they kn[e]w [he was] P.C. so, [he] [could] get attacked." Id.

The plaintiff seeks "to be rewarded for damages of mistreatment by the fact of [him] almost dieing [*sic*] from not being properly protected, and being Disregarded." Id. at 5. He seeks $200,000 because he now suffers from "irregular blood pressure rate," he "need[s] glasses from the fact [his] blood pressure is very elevated" and he "almost ha[d] a heart attack." Id. He says he also has "to take a[n] additional Asthma pump due to the Covid-19 outbreak." Id. The plaintiff also asks that "those individuals should be retrained, but, not fired," and he wants "those individuals with body cameras, and them to know how serious these matters were and are." Id.

C. Analysis

The complaint does not state whether the plaintiff was a pretrial detainee or a convicted person at the time of the alleged events. The Wisconsin Circuit Court Access website shows that on August 6, 2020, a criminal complaint was filed against the plaintiff, but judgment of conviction was not entered until November 20, 2023. See State v. Burns, Milwaukee County Case Number 2020CF2693, available at https://wcca.wicourts.gov/. This shows that in December 2021, the plaintiff was at the jail as a pretrial detainee.

Because the plaintiff was a pretrial detainee at the time of the alleged events, his claim arises under the Fourteenth Amendment. See Mulvania v. Sheriff of Rock Island Cnty., 850 F.3d 849, 856 (7th Cir. 2017). Jail officials may violate a pretrial detainee's constitutional rights if they act unreasonably

5
Case 2:23-cv-01266-PP   Filed 12/13/23   Page 5 of 14   Document 11

to objectively serious living conditions that deprive the detainee of basic human needs. See Smith v. Dart, 803 F.3d 304, 309–10 (7th Cir. 2015). To state a claim regarding the conditions of his confinement, the plaintiff must allege that the conditions in question were objectively serious; the defendants acted purposefully, knowingly or recklessly with respect to the consequences of his actions; and the defendants' conduct was "objectively unreasonable"—that is, it was not "'rationally related to a legitimate non-punitive governmental purpose'" or was "'excessive in relation to that purpose.'" Hardeman v. Curran, 933 F.3d 816, 821–22 (7th Cir. 2019) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015)).

The nature of the plaintiff's claims is unclear. He alleges that he felt ill and called a medical emergency. He does not say whether anyone responded, but he says that he told a passing nurse about his symptoms. She administered a COVID-19 test and told the plaintiff she would notify defendants Polk and Proeber if the results of the plaintiff's test were positive. She advised the plaintiff to again call a medical emergency if his results were positive. The plaintiff says the officers never told him what the results of his test were, but he does not say whether the nurse ever notified them about the results. It is possible the nurse never told the officers the results of the test before the plaintiff passed out and had to be carried out of his cell. The complaint does not state whether the officers failed to notify the plaintiff about his results or whether they simply never were informed about the results of the test. The complaint does not allege anything else about these two defendants.

6

The complaint alleges that when the plaintiff returned to the jail from the hospital, "Classification" placed him in the general population instead of back on protective custody status. He says unspecified staff or officers also put him in a "Covid-19 positive pod." It is not clear if the plaintiff means that he was put in a housing pod because *he* had tested positive for COVID-19 or if he was placed in a housing pod with *other* incarcerated persons who had tested positive. Nor does he say whether he was positive for COVID-19 when he returned from the hospital. If he was, it would make sense for the jail's classification office to house the plaintiff in a pod for incarcerated persons who had tested positive for COVID-19 to avoid spreading the disease to other persons who were not positive for the virus.

The complaint also alleges that the plaintiff "was punished" by being locked in his cell for days at a time and denied phone calls to his family or a shower. These allegations could amount to a Fourteenth Amendment claim. But the plaintiff does not say who punished him, just that he "was punished." Dkt. No. 1 at 4. Was it officer Polk or Proeber who "punished" him? Was it the John Doe defendants? The court cannot tell who the plaintiff believes is responsible for punishing him and who he might state a claim against for these conditions.

The complaint says that unspecified officers told the plaintiff that other incarcerated persons in his general population housing pod knew that he was supposed to be on protective custody and that he was the only person in that pod who was on protective custody. As with the claim about being punished,

these unspecified officers could be Polk and Prober or the John Doe defendants that the complaint names in the caption. But the plaintiff does not identify these defendants, not even as John Does. He refers to them only as "officers." The court cannot determine from this vague identifier the person or persons to whom the plaintiff is referring. See Grieveson v. Anderson, 538 F.3d 763, 778 (7th Cir. 2008) (plaintiff cannot rely on "vague references" to defendants "without specific allegations tying the individual defendants to the alleged unconstitutional conduct").

The plaintiff says that being in general population put him at risk of being attacked, but he does not say whether he *was* attacked or whether he was threatened by other incarcerated persons. To state a claim under the Fourteenth Amendment about his risk of harm, the plaintiff must allege that "a reasonable officer in a defendant's circumstances would have appreciated the high degree of risk the detainee was facing." Thomas v. Dart, 39 F.4th 835, 841 (7th Cir. 2022). The complaint does not contain allegations from which the court can infer whether the unspecified officers knew or should have known that housing the plaintiff in general population created an unreasonable risk to his safety. For example, the complaint does not allege that the plaintiff was in protective custody because other incarcerated persons attacked or threatened him and that he was housed with those persons on general population. That the plaintiff was moved from protected custody to the general population, on its own, does not necessarily demonstrate that he faced a "high degree of risk" by being housed there.

The plaintiff says in the request for relief section of his complaint that he "almost die[d] from not being properly protected, and being Disregarded." Dkt. No. 1 at 5. But it is not clear whether he means he almost died from contracting COVID-19 or from being placed on a non-protected housing pod when he returned from the hospital. The remainder of his request for relief discussed symptoms he now suffers, but he does not explain whether he suffers those symptoms because of having contracted COVID-19 or because of something that happened as a result of his being housed in general population. The complaint does not say anything about the conditions of the plaintiff's confinement that led to him contracting COVID-19. He says he was in protective custody when he got sick. He does not say whether there were other incarcerated persons who had the virus who were inappropriately housed with him, whether the jail was unconstitutionally overcrowded or whether there were other conditions that made it unreasonably likely that he would contract COVID-19. That the plaintiff contracted COVID-19 in December 2021, at a time when the entire country was experiencing an outbreak fueled by the Omicron variant, does not alone suggest that jail staff violated his rights. The risk of contracting COVID-19 at that time was a reality of life for both incarcerated and non-incarcerated persons.

The complaint as alleged does not state a claim against any named defendant. The plaintiff alleges that he contracted COVID-19 and suffered severe symptoms, but he does not allege that conditions at the jail caused him to become sick. He alleges that he was placed in the wrong housing pod when

he returned from the hospital, but he does not say who placed him there. He alleges that he could have been attacked in general population, but he does not allege that he *was* attacked or threatened or that he was at high risk of being attacked. He alleges that he "was punished," but he does not say who punished him. It is possible that the complaint *could* state a claim under the Fourteenth Amendment based on the conditions of the plaintiff's confinement, but as it stands, it does not contain enough information to allow the plaintiff to proceed on any of these potential claims.

Because the plaintiff might be able state a claim if he amended the complaint to provide additional detail, the court will provide him an opportunity to amend his complaint. When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The plaintiff's amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a copy of its amended complaint form. The plaintiff must list the case number for this case on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he

believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to five additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete by itself. The plaintiff may not refer the court back to his original complaint. He instead must repeat in the amended complaint any of the facts from the original complaint that he believes are necessary to his claims.

The court must address two additional matters. First, the plaintiff asks the court to order the responsible officers to be retrained. But the court does not have the authority to order the jail to retrain its officers. The plaintiff may seek damages in this lawsuit, but he may not ask the court to interfere with jail operations. See, *e.g.*, Westefer v. Neal, 682 F.3d 679, 683 (7th Cir. 2012).

Second, with the complaint the plaintiff filed a document titled "Order to Show Cause for a Preliminary Injunction & a Temporary Restraining Order." Dkt. No. 2. This is not a request or motion asking the court to provide the plaintiff preliminary injunctive relief or a temporary restraining order. It is a draft court order providing the plaintiff relief enjoining defendants Polk and Proeber "from threatening to pay other Detainees to 'hurt [him]', having Deputies try and hurt or harass [him], 'target [him] and stop [his] mail from going out'" and other relief. Id. at 1. The order says that it is based on "the complaint, the supporting affidavits of plaintiffs, and the memorandum of law submitted herewith." Id. But the court did not receive any affidavits or a memorandum of law. The only document the court received related to a

preliminary injunction or temporary restraining order is this proposed order. Because the plaintiff's document is not a motion or request, and because the plaintiff did not provide any of the supporting materials he identifies in the proposed order, the court will take no action on this document. If the plaintiff complies with this order and files an amended complaint, he may separately file a motion requesting a preliminary injunction. But he must follow the procedures explained in Federal Rule of Civil Procedure 65, and the court will allow the defendants to respond to the motion.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 3.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive it* by the end of the day on **January 12, 2024**. If the court receives an amended complaint by the end of the day on January 12, 2024, the court will screen the amended complaint as required by 28 U.S.C. §1915A. If the court does not receive an amended complaint by the end of the day on January 12, 2024, the court will dismiss this case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$319.30** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Dodge Correctional Institution.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that **it is his responsibility** to promptly notify the court if he is released from custody or transferred to a different institution (something he did not do when he was transferred from the Milwaukee County Jail to Dodge Correctional). The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 13th day of December, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**

14
Case 2:23-cv-01266-PP   Filed 12/13/23   Page 14 of 14   Document 11