UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

LAWRENCE GREGORY BURNS,

                        Plaintiff,

  v.                                                               Case No. 23-cv-1266-pp

S. POLK, J. PROEBER
and JOHN DOE DEFENDANTS,

                        Defendants.

---

**ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 12) AND ORDERING PLAINTIFF TO CHOOSE THE CLAIM ON WHICH HE WISHES TO PROCEED**

---

Plaintiff Lawrence Gregory Burns is incarcerated at Kettle Moraine Correctional Institution and is representing himself. On December 13, 2023, the court screened the plaintiff's complaint under 42 U.S.C. §1983 and determined that it did not state a claim. Dkt. No. 11. The court detailed the plaintiff's allegations and explained that the complaint "does not contain enough information to allow the plaintiff to proceed on any of these potential claims." Id. at 10. The court gave the plaintiff an opportunity to file an amended complaint that provided additional detail. Id. On January 5, 2024, the court received the plaintiff's amended complaint. Dkt. No. 12. The court received a second, identical copy of the amended complaint on January 10, 2024. Dkt. No. 13. This order screens the amended complaint.

## I. Screening the Amended Complaint (Dkt. No. 12)

### A. Federal Screening Standard

As the court explained in the previous order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiff's Allegations

The amended complaint names the same defendants as the original: correctional officers S. Polk and J. Proeber and "John Doe defendants." Dkt. No. 12 at 1. The plaintiff alleges that he was a pretrial detainee in protective custody (PC) at the Milwaukee County Jail. Id. at 2. He says he was on PC "due to the severity of the status of the pending cases, threats from family of 'alleged victims' also friends and current case involving 'beating by "alleged police officers and Jailors."'" Id. He says that in a pending state court civil case, he alleged that he "was beat by Jailors and also targeted by police," who allegedly "were telling inmates or people incarcerated" that the plaintiff "[i]s the Police." Id. at 2–3. The plaintiff says the jailors and sheriff's deputies that he sued in his state court civil case were harassing him, hiding his legal mail and calling him "derragatory [*sic*] names." Id. at 3. The plaintiff says he "made complaints also Grievances on some John Doe Defendants," but he does not know all their names. Id.

3

The amended complaint alleges that on December 24, 2021, the plaintiff "called a medical emergency due to a Covid-19 outbreak." Id. He says the PC housing pod "was unsanitary" and the classification department was "mixing Covid-19 positive Detainees in with" the detainees on PC, "which caused the Outbreak to spread to [their] pod." Id. The plaintiff alleges that "Covid-19 Positive officers were also working [his] pod and [the detainees] weren't provided adequate cleaning materials, mops or Sanitizing solution." Id. He says he pressed the "medical emergency button" before he passed out, and "Jailor S. Poke [*sic*] and J. Proeber were the Shift officers/Jailors over the protective custody pod." Id. at 3–4.[1] Neither officer answered the plaintiff's call. Id. at 4.

Officer Polk later "did a round" with a nurse (not a defendant), and the plaintiff "was standing at the cell door and [he] banged on the Door and asked her to 'please take [his] temperature.'" Id. The plaintiff says he was sweating, could not see straight or walk and "felt as if [his] breathing was shortened." Id. Polk opened the plaintiff's cell door, and the nurse took his temperature, which he says was 99 degrees. Id. The nurse told the plaintiff "to wait to call the Medical Emergency and she will be back in 10 minutes to test [him] for Covid-19." Id. She said she would tell Polk and Proeber, and if the plaintiff tested positive for Covid-19, "they [would] notify [him] and then [he could] call for medical emergency." Id. The nurse returned later and administered the Covid-19 test, and the plaintiff waited fifteen minutes as she instructed. Id. He says

---

[1] The court infers that "S. Poke" is a misspelling of "S. Polk," which is the name that the plaintiff uses in the caption and throughout the amended complaint.

he "waited as long as [he] could, but pressed the medical Emergency button" because he could not breathe or stand and "felt as if [he] was being stabbed in the chest with a butcher knife." Id.

The plaintiff pressed the emergency button, but "all [he] remember[s] is waking up and being carried out of [his] cell by at least 5 Milwaukee County Jailors." Id. at 4–5. He says nursing staff was there, as was a lieutenant. Id. at 5. He does not say whether officers Polk and Prober were present. Id. Nurses took his vitals, which were elevated, and he "felt immense pain in [his] chest." Id. An ambulance arrived to take the plaintiff to a hospital, where he learned he was positive for Covid-19. Id. He says he contracted Covid-19 at the jail and "was never Covid-19 positive until December 24, 2021." Id. He says that Polk and Proeber "never alerted [him] if [he] was positive for Covid-19." Id. He says he does not know "if the nurse notified them or the officers, because [he] was not in the officers bubble to hear the call." Id.

When the plaintiff returned to the jail, he was placed in general population even though he remained on protective custody status. Id. at 5–6. He says he was the only PC detainee in general population, and Polk was stationed on that pod. Id. at 6. He says Polk "was threatening to expose [his] classification status to other incarcerated people." Id. He says he "felt unsafe, due to being the only (P.C) and knowing the 'threats['] made by the 'alleged victims' family and friends" in his pending state cases. Id. He says these threats were "known by" Polk and Proeber "and other John Doe Defendants," and they also knew "how [he] was called those names." Id. The plaintiff says he

5

does not know who put him in general population or why, and he does not know if he was still positive for Covid-19. Id. But he says that he "was somehow identified by other incarcerated persons as a (P.C) and was threatened by other persons." Id.

The plaintiff alleges that he was denied an "hour out to shower and use the telephone when everyone else was locked in," and he says he "was denied to come [*sic*] out of [his] cell for over 70 hours." Id. He says unnamed shift supervisors and jailors "never let [him] out or made arrangements for [him] to shower or talk to [his] family." Id. He says he felt "punished" and "as if [he] was treated unequally." Id. He says that during those 70 hours, "multiple Jailors working the pod [he] was on . . . refused to let [him] out," but he does not know their names. Id. at 7. He says these are the John Doe Defendants. Id.

The plaintiff claims that he "almost Died from Jailor S. Polk and J. Proeber, not attending to [his] Medical Emergency and Disregarding [him] and [his] constant calls for help." Id. He reiterates that neither officer answered his emergency call to tell him whether he was positive for Covid-19 and "to see if [he] was injured or alive." Id. He says he contracted Covid-19 "3 more times due to the unsanitary conditions of the jail and Classification (John Doe Defendants) improperly mixing negative and positive people together." Id. He says he suffers from high blood pressure for which he now takes medication, he now needs to wear glasses, he takes "(2) asthma pumps" for his breathing and his "liver was abnormal for a while." Id. He also says that his "smell and taste has been abnormal." Id.

The plaintiff seeks $200,000 in damages against Polk and Proeber for failing to respond or tend to his medical emergency. Id. at 8. He also seeks unspecified damages against the John Doe defendants "who never attended to [him] and mixed Covid-19 positive people in with negative." Id. He says "the Milwaukee County Jail needs to have routine cleaning[,] mops, bleech [sic], soaps and sanitize for Jail." Id. He says he is "also requesting this be provided for health issues in Jail." Id.

C. Analysis

The court explained in the previous order that the plaintiff was a pretrial detainee at the jail in December 2021, and the amended complaint confirms the plaintiff's status at that time. The amended complaint seeks to proceed on the same primary claim as the original complaint—that officers Polk and Proeber disregarded and did not respond to the plaintiff's medical emergency, and as a result he almost died. He says that when he called for help, Polk and Proeber were the shift officers on his PC housing pod and did not respond to his call. Polk later walked by with a nurse, who administered a Covid-19 test and told the plaintiff she would notify defendants Polk and Proeber if the results of the test were positive. She advised the plaintiff to again call a medical emergency if his results were positive. The plaintiff says that neither the nurse nor the officers told him what the results of his test were. The court observed in the first screening order that "[i]t is possible the nurse never told the officers the results of the test before the plaintiff passed out and had to be carried out of his cell." Dkt. No. 11 at 6. The plaintiff says he does not know whether the

nurse told the officers the results of his Covid-19 test. It remains unclear whether officers Polk and Proeber ever knew that the plaintiff tested positive for Covid-19 before he was taken to the hospital.

The court analyzes the plaintiff's claim about being denied emergency medical attention under the Fourteenth Amendment. Miranda v. County of Lake, 900 F.3d 335, 352 (7th Cir. 2018) (citing Kingsley v. Hendrickson, 576 U.S. 389 (2015)). To proceed on this claim, the plaintiff must show that 1) "the 'defendants acted purposefully, knowingly, or perhaps even recklessly'" and 2) "the defendants' actions were [not] 'objectively reasonable.'" Pittman by & through Hamilton v. County of Madison, Ill., 970 F.3d 823, 827 (7th Cir. 2020) (quoting Miranda, 900 F.3d at 353–54). The plaintiff's allegations must show "'more than negligence but less than subjective intent—something akin to reckless disregard'" to proceed on a Fourteenth Amendment claim. Id. at 353–54 (quoting Gordon v. County of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018)).

The amended complaint does not make clear whether Polk and Proeber ever were aware that the plaintiff tested positive for Covid-19. It also does not make clear whether they were aware that he needed emergency medical treatment until he pressed his emergency medical button and passed out, after which several officers and nurses appeared at his cell. But construing the allegations of the amended complaint in the plaintiff's favor, he alleges enough to suggest that Polk and Proeber disregarded his initial call for emergency medical help. After the plaintiff received medical attention from a nurse, these officers again failed to respond and provide him immediate medical attention. It

8

was not until some time later, after the plaintiff had passed out from his physical symptoms, that the plaintiff finally received medical attention. Eventually, the evidence may reveal that the officers never knew that the plaintiff had tested positive for Covid-19 or that he needed immediate medical attention. But accepting the allegations of the amended complaint as true for purposes of this screening order, the court concludes that it alleges enough to state a Fourteenth Amendment claim against officers Polk and Proeber.

The amended complaint next alleges that when the plaintiff returned to the jail from the hospital, he was placed in general population with other non-PC incarcerated persons. He newly alleges that Polk was stationed in his housing pod and that Polk threatened to tell other detainees that the plaintiff was on PC status. He does not say whether Polk *did* tell anyone about his PC status. But the plaintiff says he felt unsafe, and that other detainees eventually learned that he was on PC. The plaintiff says that "other persons" threatened him, but he does not say whether these were incarcerated persons, other officers or people outside the jail. The court explained in the previous order that to state a claim under the Fourteenth Amendment about this risk of harm, "the plaintiff must allege that 'a reasonable officer in a defendant's circumstances would have appreciated the high degree of risk the detainee was facing.'" Dkt. No. 11 at 8 (quoting Thomas v. Dart, 39 F.4th 835, 841 (7th Cir. 2022)).

The amended complaint does not contain allegations suggesting that the plaintiff faced a high risk of being attacked or that any defendant should have

9

"appreciated the high degree of risk" that the plaintiff faced. Like the original complaint, it alleges only that the plaintiff was moved from PC to general housing at the jail and felt unsafe. As the court explained in the previous order, this change in housing, "on its own, does not necessarily demonstrate that he faced a 'high degree of risk' by being housed there." Id. The plaintiff newly alleges that Polk threatened to tell other incarcerated persons about the plaintiff's PC status. But the plaintiff does not allege that he had any reason to fear retaliation by any other incarcerated person. He says he was on PC because of threats he received from others *outside* of the jail, including from friends or family of "the alleged victim" in his state criminal case and officers or jailors involved in a pending state court civil case. The amended complaint does not allege any basis for the plaintiff to feel at risk from other detainees at the jail who knew he was on PC status while housed in general population. Nor does it allege any basis for jail staff to be aware of a threat the plaintiff faced from other detainees in general population housing. The court will not allow the plaintiff to proceed on a claim about a risk to his safety by being moved to general housing.

The amended complaint alleges that the plaintiff was not given an hour out of his cell to shower or use the phone, and at one point he was locked in his cell for at least 70 hours. He says he felt punished and treated unequally. He does not know who locked him in his cell, but he says it was "multiple Jailors" who refused to let him out of his cell or talk to his family. He uses a John Doe placeholder to identify these defendants. The court explained in the

10
Case 2:23-cv-01266-PP   Filed 03/12/24   Page 10 of 14   Document 15

previous order that these allegations "could amount to a Fourteenth Amendment claim." Dkt. No. 11 at 7. To state a claim regarding the conditions of his confinement, the plaintiff must allege that the conditions in question were objectively serious; the defendants acted purposefully, knowingly or recklessly with respect to the consequences of his actions; and the defendants' conduct was "objectively unreasonable"—that is, it was not "'rationally related to a legitimate non-punitive governmental purpose'" or was "'excessive in relation to that purpose.'" Hardeman v. Curran, 933 F.3d 816, 821–22 (7th Cir. 2019) (quoting Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015)).

The amended complaint does not provide any reason why jail staff locked the plaintiff in his cell for 70 hours. He does not say whether he was being punished (though he does say he *felt* punished) or whether he was locked in his cell for his own protection. The court cannot determine whether the jail had "a legitimate non-punitive governmental purpose" for keeping the plaintiff in his cell for 70 hours. The court can assume for purposes of this order that jail staff did not have a legitimate reason to keep the plaintiff locked in his cell so long. With that assumption in mind, the plaintiff may state a Fourteenth Amendment claim against the John Doe defendants.

But this claim about the plaintiff being locked in his cell is not related to his claim about officers Polk and Proeber disregarding his call for emergency medical treatment, and it involves different defendants (the John Doe defendants). It is acceptable for a plaintiff to bring multiple claims against a single party in one complaint, but a plaintiff cannot bring *unrelated* claims

against different defendants in the same case. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Fed. R. Civ. P. 18(a) and 20(a)(2). "Joinder that requires the inclusion of extra parties is limited to claims arising from the same transaction or series of related transactions." Wheeler v. Wexford Health Sources, Inc., 689 F.3d 680, 683 (7th Cir. 2012). The amended complaint violates Rules 18 and 20 because it seeks to bring these unrelated claims against different defendants in the same case. The two claims do not have defendants in common, nor do they share questions of law or fact. The amended complaint does not even say when the plaintiff was locked in his cell. The plaintiff says only that it was sometime after December 24, 2021, when he was hospitalized with Covid-19.

The amended complaint also alleges that the plaintiff contracted Covid-19 an additional three times because jail staff improperly mixed persons who were positive and negative for the disease and because of "unsanitary conditions" at the jail. He does not allege whether there was a legitimate reason for jail staff to house these persons together, and he says that he has long-lasting physical ailments from contracting Covid-19 four times. Like the allegations about being locked in his cell, these allegations could state a Fourteenth Amendment claim against the John Doe defendants. But also like the above claim, this claim is unrelated to the plaintiff's first claim against Polk and Proeber. The plaintiff does not allege that Polk or Proeber were involved in or responsible for the conditions of the jail, for the mixed housing in the

general population housing pod or for him contracting Covid-19 again. He also does not allege *when* he again contracted Covid-19.

The amended complaint states at least one plausible claim for relief, but it improperly seeks to proceed on unrelated claims against different defendants. The court must reject the amended complaint "either by severing the action into separate lawsuits or by dismissing the improperly joined defendants." Owens v. Hinsley, 635 F.3d 950, 952 (7th Cir. 2011) (citing Fed. R. Civ. P. 21). Before doing either of those things, the court will give the plaintiff an opportunity to choose which of the above-described unrelated claims he wants to proceed on in this case. The plaintiff may, by the deadline the court sets below, file a response to this order choosing between 1) his Fourteenth Amendment claim against Polk and Proeber for disregarding his need for emergency medical attention or 2) his Fourteenth Amendment claim about the conditions of his confinement, including his 70-hour lockdown and the unsanitary conditions at the jail that led to him contracting Covid-19 three additional times. If the plaintiff does not respond to this order by the deadline the court sets below, the court will allow the plaintiff to proceed on claim 1 against Polk and Proeber and will dismiss the John Doe defendants and the second claim about the conditions of his confinement.

## II. Conclusion

The court **ORDERS** that by the end of the day on **April 12, 2024**, the plaintiff must file a written response to this order, choosing one of the above claims to proceed on in this lawsuit. The court must file his written response in time for the court to *receive* it by the end of the day on April 12, 2024. If the

court does not receive the plaintiff's written response by the end of the day on April 12, 204, the court will allow him to proceed on his Fourteenth Amendment claim against officers Polk and Proeber and will dismiss the John Doe defendants and the plaintiff's claims against them.

Dated in Milwaukee, Wisconsin this 12th day of March, 2024.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**